UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

**DUKES BRIDGE, L.L.C.,**

                Plaintiff,                      Case No. 10-cv-14329

vs.                                           HON. GEORGE CARAM STEEH

**GILBERT EASTIN, et al.,**

                Defendants,

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT GAIL WELICKI AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AGAINST DEFENDANT GILBERT EASTIN**

**I.    Introduction**

Plaintiff, Dukes Bridge LLC, filed the instant action seeking to recover damages sustained as a result of defendants, Gilbert Eastin's and Gail Welicki's, allegedly fraudulent acts in connection with the procurement of a $20,000,000.00 life insurance policy. Before the court are the following motions: (1) Plaintiff's motion for summary judgment against Mrs. Welicki and (2) plaintiff's motion for judgment on the pleadings against Mr. Eastin or, in the alternative, for summary judgment. Mrs. Welicki filed a response to plaintiff's motion for summary judgment on April 11, 2011, and plaintiff filed

1

a reply to Mrs. Welicki's response on April 21, 2011. To date, defendant Eastin, proceeding pro se, has failed to file any response to plaintiff's pending motion.

## II. Factual Background

On or about December 1, 2007, Mr. Eastin, as grantor, established the Eastin Trust. The original trustee of the Eastin Trust was Mrs. Welicki, Mr. Eastin's daughter, and the original beneficiary was Bobbie Everett. Mrs. Welicki had never served as a trustee before, was unsure what her responsibilities entailed and guessed it had to do with the administration of her father's estate when he died.

On or about December 13, 2007, Mrs. Welicki and Mr. Eastin applied for a life insurance policy (the "Eastin Policy") with The John Hancock Life Insurance Company. Mrs. Welicki claims she first learned of her father's interest in obtaining a life insurance policy in mid-2007. She did not know who would be paying the premiums on the policy, but understood that she and her father would not be responsible for payment of the premiums. She further understood that she would not receive any money from the life insurance policy and was told that a foundation was to receive the money for the education of children. She had no understanding of how the transaction was structured and could not follow her father's explanations to the few questions she raised. She admits that she signed the application but claims that she does not recognize any of the other handwriting on the application's pages, except for her father's signature. When she was presented with the application, her father's income and asset information was left blank.

The application for the life insurance policy, signed by both defendants, stated that Mr. Eastin had a gross annual unearned income of $5,000,000.00 and a household

net worth in excess of $100,000,000. On December 26, 2007, John Hancock issued the Eastin Policy, number 93-689-388, insuring the life of Mr. Eastin in the amount of $20,000,000.00. At the time of the issuance, the Eastin Trust was the sole owner and beneficiary of the Policy.

On or about January 15, 2008, Everett sold her beneficial interest in the Eastin Trust to American Heritage Enterprises, L.L.C. ("AHE"). AHE purchased the beneficial interest in the Eastin Trust and paid premiums on the Eastin Policy with funds that it borrowed from plaintiff's assignor and sole member, Ridgewood Finance Inc. ("Ridgewood"). As part of the sale of the beneficial interest in the Eastin Trust, Mr. Eastin signed a document entitled "Consent and Undertaking of Insured," which provides:

> 3. No statement, covenant, representation or warranty which I have made in any application, certification, worksheet or other document related to the issuance of the [Eastin] Policy, or otherwise made to the Insurer [John Hancock], contained or shall contain any untrue statement of fact, or omitted or shall omit any fact necessary to make such covenant, representation and/or warranty not misleading in light of the circumstances under which such statements were made.
>
> \*     \*     \*
>
> I acknowledge and agree that this Consent is being delivered to the Assignee [AHE] and any lender of the Assignee in connection with the Transfer and that the statements, acknowledgments, representations and warranties contained herein are being relied on by the Assignee and any lender to the Assignee in connection with the Transfer.

Compl. ¶ 16; Ex. B. Mrs. Welicki claims that she did not know about AHE's lender nor that Ridgewood was taking a security interest to secure the loan to AHE. According to Mrs. Welicki, contemporaneously with the Consent and Undertaking, her father gave

3

her several documents to sign, including the Resignation of Trustee and Appointment of Successor Trustee of the Gilbert Eastin Remainder Trust dated 12/1/2007.  See Compl., Ex. C.  Without reading it, Mrs. Welicki signed the Resignation at her bank and gave it back to her father.  Jonah Meer was named as the successor trustee.

On January 30, 2008, a representative of Ridgewood called Mrs. Welicki to confirm the veracity of the statements in the Eastin Policy application.  According to plaintiff, the representative asked Mrs. Welicki, "[a]re you aware of any false statement or material omission contained in the documentation submitted to the insurer relating to the initial issuance of the Eastin Policy?"  Mrs. Welicki answered "no."  Mrs. Welicki denies being contacted by a Ridgewood representative and testified at her February 3, 2010 deposition that she had no recollection of speaking with a Ridgewood representative.

Ridgewood loaned AHE $2,067,987.00 so that AHE could purchase the beneficial interest in the Eastin Trust, and pay premiums on the Eastin Policy.  Ridgewood claims that it would not have loaned any funds to AHE had it been aware that there were misrepresentations in the Eastin Policy application and in the documents signed in connection with the Eastin beneficial interest sale.  Ridgewood subsequently assigned its rights, title, and interest in the loan to plaintiff.

In February of 2009, Mrs. Welicki received correspondence from John Hancock indicating that the policy was fraudulently obtained and rescinded.  See Def. Welicki's Resp., Ex. 9.  She claims that this is the first time that she learned of the fraud.

On May 7, 2009, John Hancock filed suit against Mr. Eastin and Mrs. Welicki in the Oakland County Circuit Court, Pontiac, Michigan.  John Hancock alleged that both

defendants made misrepresentations in the Eastin Policy application concerning Mr. Eastin's actual net worth and income, which were "materially and substantially less than claimed in the" application. John Hancock further alleged that court filings in an unrelated Michigan state court action indicated that "Eastin's annual income consisted of pension payments totaling approximately $60,000.00."

On May 27, 2009, both Mr. Eastin and Mrs. Welicki signed a letter sent to John Hancock's attorneys in response to the complaint filed in the Oakland County Circuit Court, stating that "[A]fter reviewing the Complaint and discussing these transactions, it is our opinion that your client [John Hancock] is entitled to the liability relief sought in the Complaint." Compl. ¶ 18, Ex. E. Mrs. Welicki maintains that after she and her father were sued in the state court action, her father retained an attorney, Mr. Hartwick. After retaining Mr. Hartwick, Mr. Eastin presented the May 27, 2009 correspondence to Mrs. Welicki and asked her to sign it, and she complied because her father asked her to. Mrs. Welicki maintains that she had no part in drafting the letter, and that Mr. Hartwick instructed her to sign off on the settlement documents with John Hancock without providing her with an opportunity to read them.

Also, on May 27, 2009, Mrs. Welicki, in her individual capacity and in her capacity as trustee of the Eastin Trust, executed a Mutual Release with John Hancock. The Mutual Release stated in relevant party: "Policy Holder [the Eastin Trust] does not dispute John Hancock's position as to the validity of the Eastin Policy and certain of the relief sought by John Hancock." Mrs. Welicki signed the Mutual Release despite having resigned as trustee on January 15, 2008. On June 3, 2009, Mr. Eastin and Mrs. Welicki executed a Consent Judgment that consented to a judgment declaring that the Eastin

Policy was void and that John Hancock could retain the premiums paid for the Eastin Policy.

Subsequently, John Hancock filed suit against Jonah Meer in the United States District Court for the Eastern District of New York. In the New York action, John Hancock alleged that Meer and the Eastin Trust were bound by the Mutual Release and Consent Judgment executed by Welicki in her purported capacity as trustee of the Eastin Trust. On February 2, 2010, Mr. Eastin was deposed in the New York action.

> Q. Is it your understanding that you lied to John Hancock?
> A. Yes.
> Q. And that you signed documents making representations to John Hancock that were false?
> A. I am aware of that now, yes.

<u>See</u> Dep. Tr. of Gilbert Eastin at ____. On February 3, 2010, Mrs. Welicki was deposed in the New York action:

> Q. Would you be surprised to learn that I made that [sic] representation to you that he [Gilbert Eastin] said he committed fraud in these transactions?
> A. No, because I feel we all did.
> Q. Now, when you say that you committed fraud, does that fraud-is the basis of the fraud the representations that were made in the application for the life insurance policy to John Hancock?
> A. I believe so. But not with my knowing. I feel it did happen, but I don't feel that–it wasn't intentional on our part.
> Q. What types of misrepresentations were made in the applications for the life insurance policies? What are your understanding of what those misrepresentations were?
> A. Well, it looks like the annual income of my dad and his assets.

<u>See</u> Dep. Tr. of Gail Welicki at _____.

Plaintiff agreed to a rescission of the Eastin Policy as part of a settlement of the New York action with John Hancock and others. Plaintiff claims that it agreed to a rescission based upon defendants Welicki's and Eastin's admissions. AHE defaulted

under the loan, and plaintiff lost its security interest in the loan. Plaintiff claims to have been damaged in the amount of $2,067,987.00 plus interest and consequential damages, including damages incurred in litigating with John Hancock in the New York action and fees incurred in pursuing the action.

### III. Law & Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

  **B.**  **Plaintiff's Motion for Summary Judgment Against Mrs. Welicki**

"As a general rule, actionable fraud consists of the following elements: 1) the defendant made a material misrepresentation; 2) the representation was false; 3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; 4) the defendant made the representation with the intention that the plaintiff would act upon it; 5) the plaintiff acted in reliance upon it; and 6) the plaintiff suffered damages." *Chires v. Cumlus Broadcasting, LLC,* 543 F. Supp. 2d 712, 721 (E.D. Mich. 2008) (citing *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27; 585 N.W.2d 33, 36 (1998)).

Plaintiff argues that summary judgment must be granted because there is no genuine issue of material fact in dispute. Defendant Welicki has testified under oath that she and her father committed fraud in connection with the procurement of the Eastin Policy. Plaintiff maintains that defendant Welicki admitted at her February 3, 2010 deposition in the New York action that she and her father made material misrepresentations to John Hancock in the Eastin Policy application and to Ridgewood in the Eastin beneficial interest sale documents. Plaintiff relies on the May 27, 2009 letter signed by both defendants admitting that claims made by John Hancock in the Oakland County Circuit Court action were true. Plaintiff also relies on the alleged phone call to defendant Welicki from a Ridgewood representative on January 30, 2008 and her execution of the Consent Judgment and Mutual Release on June 3, 2009, signed in her purported capacity as trustee of the Eastin Trust despite having resigned in writing on January 15, 2008 as trustee and appointing Meer as the successor trustee, documents in which she admitted to committing fraud in the procurement of the Eastin Policy.

Defendant Welicki counters that there is a material fact in dispute on the first element for the fraud claim because she signed the Eastin Policy application when the information as to her father's income and net worth was absent and someone filled this information in after she signed the application. Defendant Welicki further argues that the phone call from a Ridgewood representative never occurred, and in any event, she did not know Ridgewood existed and that it was extending a loan to AHE for the purchase of the beneficial interest in the Eastin Trust.

Plaintiff counters that AHE was defendant Welicki's agent and she can be liable for her agent's fraud even if she did not know about that misrepresentations were made. At oral argument, counsel for plaintiff conceded that Mrs. Welicki did not input the fraudulent financial information herself. Therefore, plaintiff must establish that an agency relationship existed between Mrs. Welicki and American Heritage Enterprise ("AHE"). Plaintiff has failed to meet this burden. An agency relationship may be either actual or apparent. See Meretta v. Peach, 491 N.W.2d 278, 279 (Mich. Ct. App. 1992). Actual authority may be either express or implied. Id. Plaintiff's motion does not specify what type of agency relationship existed between AHE and Mrs. Welicki, nor did counsel describe specifically the type of agency relationship during oral argument. However, plaintiff has not alleged an express relationship between Mrs. Welicki and AHE, so the court will not address whether an express relationship existed between Mrs. Welicki and AHE.

An implied agency relationship may be created by facts and circumstances controlled by the principal over a period of time. See Weller v. Speet, 275 Mich. 655, 659 (Mich. 1936). The scope of authority the agent acquires is in accordance with general custom, usage and trade practice in the industry. See Meretta, 491 N.W.2d at 279. However, the principal must be aware of the trade customs and practices. Id. Typically, these questions are not properly disposed of in a motion for summary judgment. Id.

Plaintiff has failed to present sufficient evidence to conclude an implied agency relationship existed between Mrs. Welicki and AHE. Plaintiff's presentation of the facts and circumstances surrounding Mrs. Welicki's interaction with AHE is limited. Compl.

10

¶¶ 42-46.  Further, plaintiff does not present any information on general custom, usage and trade practice in the lending industry of relying on representations made by agents on behalf of an applicant.  Plaintiff must also demonstrate that Mrs. Welicki was informed of these trade customs.  Mrs. Welicki had little understanding of the complexity of the underlying transaction.

> Q. Now, you, in connection with the transaction with American Heritage and the life insurance policies, you signed approximately how many documents?
> A. I don't know. Twenty, 30. I don't know.
> Q. Did you read all those documents?
> A. No.
> Q. Did you understand all those documents?
> A. No. That's why I didn't read a lot of them, because I couldn't understand them.

Compl., Ex. 4 at 305.

Even if plaintiff could establish an implied agency relationship, plaintiff would still have to overcome the established presumption that illegal acts are outside the scope of an agent's authority.  See Rohe Scientific Corp. v. National Bank of Detroit, 133 Mich. App. 462, 350 N.W.2d 280 (1984).  Though this court is unaware of any criminal actions brought against AHE, its undisputed actions appear to rise to the level of illegal acts. See Mich. Comp. Laws Serv. § 750.273 (LexisNexis 2010).  Plaintiff has not presented sufficient information regarding the relationship between Mrs. Welicki and AHE to rebut the presumption that AHE's actions were outside the scope of its alleged authority.

Apparent authority arises when a principal places an agent in a position where "a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act . . . ."  Atlantic Die Casting Co. v. Whiting

Tubular Products, Inc., 60 N.W.2d 174, 178 (Mich. 1953).  The principal is estopped from denying liability for the agent's actions. Id.  Apparent authority for which a principal is liable must be traceable to the actions of the principal.  See Smith v. Saginaw Savings & Loan Ass'n, 288 N.W.2d 613, 617 (1979).  The apparent authority of an agent is gathered from all the facts and circumstances.  See Atlantic Die Casting Co., 60 N.W.2d at 177.  Examples of relevant facts in an apparent authority inquiry are the previous business relationship that existed between the purported agent and principal. Smith, 288 N.W 2d at 617.  A placard showing a license to issue insurance on behalf of a principal was also held to demonstrate apparent authority.  Maryland Casualty Co. v. Moon, 231 Mich. 56, 63 (Mich. 1925).

The issue is whether a reasonable person with knowledge of trade customs would accept that AHE, based on the actions of Mrs. Welicki, was her agent.  Plaintiff has provided no detail of its direct interactions with Mrs. Welicki that could establish the apparent authority of AHE to act on her behalf.  Nor has plaintiff shown any type of public display or action from which a third party could reasonably conclude AHE was authorized to act as Mrs. Welicki's agent.  Thus, plaintiff fails to provide the necessary background to conclude that Mrs. Welicki's actions created the apparent authority for AHE to act on Mrs. Welicki's behalf.

Plaintiff's cited case law does not provide the support to establish that an agency relationship existed.  Hubert v. Joslin, 280 N.W. 780, 783 (Mich, 1938); Lane v. Wood, 242 N.W. 909, 910 (Mich. 1932); Upell v. Bergman, 224 N.W. 404, 406 (Mich. 1929); Chaffee v. Raymond, 217 N.W. 22, 23 (Mich. 1928).  The cases cited by plaintiff address the scope of authority an agent possesses.  However, plaintiff has not

established an agency relationship existed between Mrs. Welicki and AHE. Until an agency relationship is established, discussion of the scope of authority is irrelevant.

The inability to establish an agency relationship is sufficient to deny plaintiff's motion for summary judgment. During oral argument, counsel for plaintiff conceded that Mrs. Welicki did not provide the financial information herself. Thus, plaintiff must establish that AHE acted as Mrs. Welicki's agent in order for Mrs. Welicki to be held liable for fraudulent misrepresentation.

Plaintiff is also not entitled to summary judgment on its fraud claims because a fraudulent misrepresentation claim requires proof that reliance on the statement was reasonable. Nieves v. Bell Industries, Inc., 517 N.W.2d 235, 238 (Mich. Ct. App. 1994). It has been held that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." Webb v. First of Michigan Corp., 491 N.W.2d 851, 853 (Mich. Ct. App. 1992). In Webb, the plaintiffs were told that their investment would be risk free, but their reliance on this statement was unreasonable since a prospectus was provided that disclosed the risk. Id. at 853-854.

Plaintiff concludes in its complaint that its reliance on Mrs. Welicki's representation was reasonable, but offers sparse support for this assertion. Compl. ¶ 45. Plaintiff alleges that a Representative of Ridgewood called Mrs. Welicki and asked her: "Are you aware of any false statement or material omission contained in the documentation submitted to the insurer relating to the initial issuance of the [Eastin] Policy?" Id. at 13. Mrs. Welicki denies this telephone conversation ever took place, which raises a genuine issue of material fact. See Def. Welicki's Resp., Ex. 9. If the

conversation did take place, it is questionable whether it is sufficient to establish reasonable reliance. No evidence was presented on what supporting documentation was submitted to the plaintiff for the loan application, nor what the trade custom in the lending industry is for verification of income statements. Plaintiff must present relevant information in order to establish the reasonableness of its reliance on the fraudulent income statement. Further, as Webb requires, plaintiff must demonstrate that it had no available means of demonstrating the truthfulness of the income statement. Webb, 491 N.W.2d at 853.

Additionally, plaintiff has not carried its burden to establish that Mrs. Welicki committed fraud by signing the Mutual Release as the Trustee after she resigned her role as Trustee. Fraud requires a showing that the statement was made when the defendant "knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion . . . ." Candler v. Heigho, 208 Mich. 115, 121 (Mich. 1919). Mrs. Welicki arrived at the initial deposition believing that she was still the Trustee of Eastin Trust. Compl., Ex. 4 at 56. "So it's your understanding sitting here or when you walked in this morning that you were still the trustee of the Gilbert Eastin Remainder Trust? A: Right." Id. Plaintiff has submitted the Resignation of Trustee form signed by Mrs. Welicki. Compl., Ex. C. However, this alone is insufficient to establish that Mrs. Welicki understood she was no longer Trustee of the Eastin Trust. In her deposition, Mrs. Welicki claimed it was her practice to sign forms that her father asked her to sign without actually reading them. Mrs. Welicki appears to be unsophisticated in such matters and her deposition testimony raises questions about whether or not she actually understood the effect of the forms she signed. Compl., Ex. 4 at 304-307.

Alternatively, plaintiff has not adequately established Mrs. Welicki's representation that she was the Trustee of the Eastin Trust rose to the level of recklessness required for a finding of fraud. Thus, the issue of whether Mrs. Welicki knowingly committed fraud is in dispute and plaintiff is not entitled to summary judgment.

### C. Plaintiff's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment Against Mr. Eastin

For similar reasons, plaintiff has failed to establish that there is no genuine issue of material fact as to whether Mr. Eastin committed fraud. Plaintiff's discussion of its reasonable reliance on Mr. Eastin's representations is lacking. Compl. ¶ 38. Unlike Mrs. Welicki, Mr. Eastin's deposition testimony demonstrates that he is a bad faith actor in this transaction.

> Q. What is your understanding of how this transaction was entered into that is inappropriate or not according to law?
> A. That's a good question. Very good question. I believe I made some statements that were not correct and so, therefore, that would be true, then it's not according to the law. It was perpetrated to get money. And I disregarded so many things I normally would not have done. I've never done it before and I certainly will not do it again.
> Q. Is it your understanding that you lied to John Hancock?
> A. Yes.

Compl., Ex. H at 100. This admission does not satisfy the issue of the reasonableness of plaintiff's reliance on Mr. Eastin's misrepresentations. Plaintiff must still offer affirmative evidence of the reasonableness of its reliance on the misrepresentations made by Mr. Eastin. Nieves, 517 N.W.2d at 238. Plaintiff's failure to offer evidence as to the reasonableness of its reliance on Mr. Eastin's representations renders summary judgment inappropriate at this time.

## IV. Conclusion

Accordingly,

Plaintiff's motion for summary judgment against Gail Welicki [#14] is DENIED.

Plaintiff's motion for judgment on the pleadings [#13], or in the alternative for summary judgment against Gilbert Eastin is DENIED.

SO ORDERED.

Dated:  July 18, 2011

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 18, 2011, by electronic and/or ordinary mail.

<u>s/Josephine Chaffee</u>
Deputy Clerk